Good morning. The first case on a call of the docket for the November term today, Tuesday, November 15, 2011, 9.30 a.m. is agenda number one, case number 111056, People of the State of Illinois v. Christine Baskerville. Counsel for the appellant? Good morning, Your Honors. Drew Meyer of the Illinois Attorney General's Office for the People of the State of Illinois. Your Honors, there are two issues before the court. One is interpretational regarding the definition of the word obstructs in 720 ILCS 5-31-1 in the phrase knowingly resists or obstructs. The other raised in defendant's cross appeal is whether there was sufficient evidence to support his conviction, specifically whether there was sufficient evidence to show that he actually impeded the officer in this case in the execution of an authorized act. As this court has, and I should say that the appellate, in short answer to those two questions, the appellate court erred in holding that a physical act was a necessary element of obstruction under 31-1 and the evidence supports defendant's conviction under that section. As this court has held numerous times, for instance, in People v. Beautriff and People v. Connick, statutory interpretation must serve legislative intent and the best way to divine that intent is to look to the plain language of the statute. In this case, the plain meaning of the word obstructs clearly encompasses a non-physical aspect. The dictionary in force at the time of Section 31-1's enactment shows that to be true. We cite some usage examples in our briefs demonstrating that obstruct has both a physical and a non-physical aspect and can be used in either sense. I will not go into those usage examples as they are laid out in our brief, but the General Assembly itself in Section 31-4, three sections later under the same article, uses obstruct also in a non-physical sense, targeting those with intent to obstruct the prosecution or defense of any person. Clearly, this is not referring to people who actually attempt to physically bar the doors of the courtroom. This is used in a non-physical sense, so clearly the word obstruct has this aspect. Another rule of statutory interpretation that comes into play here is one that this Court also noted in People v. Connick, which is that statutory language should be given its fullest rather than its narrowest possible meaning. Mr. Meyer, would, in this case, it was a lie, correct? Correct, Your Honor. And would all lies to a peace officer violate the statute, and is there any materiality requirement? Well, Your Honor, the case law is not clear. Surely we would say that providing false information to an officer can constitute obstruction. Under this Court's decision in People v. Comage, its recent decision there, it seems as though there is a materiality aspect to obstruction. So if that answers your question, yes, a lie would have to impede the officer. There would have to be evidence that the officer was actually impeded, as there is in this case. How was he impeded? So just briefly to recount the facts. The officer in question, his name is John Dyke, Deputy John Dyke, saw the defendant's wife driving, believed that her license was suspended, intercepted her at her home. As she pulled into her driveway, he confirmed that indeed her license was suspended. They exited their vehicles at roughly the same time. He instructed her to stop. She ignored his order to stop and entered her home. At that point, sometime thereafter, moments later perhaps, the defendant exits the house, and Deputy Dyke explains that he had caught his wife driving on a suspended license and asked him to retrieve her from the house. The defendant lied, saying that he didn't know what was going on, but his wife was not home. Did he not invite him in? That happened very much later on, and I'll get to that point. But, yes, indeed, the defendant reentered the house sometime later, reemerged, telling the same lie, my wife is not at home, and said, you can go look for yourself if you want. Could I back up a little bit on the sequence of events? Sure. I think the evidence revealed that the officer saw Christine drive by Lake Holiday. At that time, he got into his car and he attempted to intercept her. In fact, he was waiting for her at the intersection of Susie and Lois Street and again identified her as the driver. That's correct, Your Honor. My question is, what prevented him from activating his lights and pulling her over at that time? Why did he follow her all the way home? He could have made the arrest rather than deal with what later happened. What prevented him from making the arrest long before she arrived at home? I beg your pardon, Your Honor. Yes. Unfortunately, he didn't confirm, and it's not clear whether it was via computer or via radio, that her license was indeed suspended until they were out front of him. But I thought he knew that her license had been suspended once he identified her. He knew. He suspected. But he thought he remembered from his own personal knowledge that her license was suspended, but he didn't. How much time passed during the drive that I've just indicated? How much time did that take? You know, I'm not sure, Your Honor. I don't believe. How long does it take to identify a license plate or get the background of a driver? I'm not sure. The only thing the record shows is that he didn't receive confirmation that her license was indeed suspended until they were in front of the Baskerville house. So that's the first moment at which he knew that her license was suspended, confirming his belief that indeed it was suspended and giving him cause to complete the traffic or initiate the traffic stop.  I'm not sure exactly the time durations involved, but I do know that he did not receive confirmation, according to the record, until they were out front of the Baskerville home. But he would have had to have impeded the officer's investigation. And where did he impede it? I mean, he lied, but then he offered the officer to come in to look for her. Correct. So the standard review here for defendant's cross appeal, claiming insufficiency of evidence underlying his conviction, is considering all evidence in light most favorable to the State, drawing all reasonable inferences therefrom in favor of the State, no reasonable juror would have convicted. In this case, there are many reasonable inferences underlying defendant's conviction. Primarily, here's the situation. You have Deputy Dyke, who is pursuing this traffic stop. He receives the initial. He sees Christine Baskerville enter the Baskerville home. That's the last time he knows where she is or what she's doing. His defendant exits the house, confronts the officer in front of the house, has this conversation with him, this verbal exchange, reenters the house ostensibly, although I don't think the record is exactly clear, ostensibly to confirm that indeed his wife is not there. But as the trial court found, to ensure that she was hidden before he offered the officer the opportunity to look, he comes back outside, talks to the officer again. During all that time, Deputy Dyke doesn't know what Ms. Baskerville has done. The lie that he tells when he reemerges from the house, reiterating that his wife is not at home, may well have planted the seed of a scene. But that could have been true by then. Exactly. That's exactly my point. That could have been true. And he offered for him to come in to look. He offered for him to come in to look. But as the trial court explicitly held, he only made that offer after he was sure that the search would not be fruitful, after he was sure that Ms. Baskerville was concealed or hidden. Where did that come from? Where did the trial court glean that? Just an inference that he went in there to hide her? That's correct, Your Honor. I'm trying to understand your argument on impeding as well. And I think you rightfully point to the standard of proof. But is part of your argument that if the officer had believed the lie that there was no reason to go in and that was part of the impediment? Well, yes, Your Honor. That's one reasonable inference that one can draw from the facts in this case that supports the conviction. Of course, as the United States Supreme Court reasoned in a similar case in which the defendant had lied to federal investigators, Brogan v. United States, which we mentioned in our briefs, the fact that a crime's existence would depend on the effectiveness of the liar or the credulity of the officer seems strange in the words of the United States Supreme Court. But that aside, Your Honor, in answer to your question, yes, at that point, the officer, Deputy Dyke, could have believed, could have reasonably believed, or at least could have had some doubt as to whether the lie was true or not. And whatever he believed, it surely dissuaded him from taking further authorized steps to complete the traffic stop. Can I ask two questions on the same line? Yes, Your Honor. The first one is about what evidence there is in the record that this was, in fact, a lie. In other words, what evidence is there in the record that, in fact, when the defendant said that Christine was not home, that she was, in fact, in the home? How do we know that that was a lie? Well, the first lie, that she was not at home, is supported by the officer's observation that she had just entered the home. Do you have a time frame of how she enters the home and closes the door? Do we have any idea when it was that the defendant exited the home? The record, to my knowledge, is not clear as to specific durations of time during which all of this took place. So how do we know? I mean, his testimony was he was asleep on the couch, and the court rejected that. But what evidence is there to support the State's theory that he knew she was, in fact, in the home? Well, the defendant concedes as much in his brief. I'm asking you, I think, for purposes of the legal argument, I'm asking you what evidence there is to support that. Well, I think it's just that it was the trial court's inference from the evidence that the defendant's wife had entered the home. And she was still there and hadn't left. And was still there and hadn't left. Or what the trial court has, again, explicitly found, is that the defendant would not have made his offer to allow the officer to search the home unless she was well hidden. The second question I have is about the obstruction. We talked about the inviting in. You refer to this as a traffic stop, and ultimately the police officer wrote a ticket, correct? Correct. So how did the defendant's statement impede the officer from writing the ticket? Well, perhaps he didn't impede the officer from writing the ticket, but certainly he impeded the officer from citing or arresting Ms. Baskerville for her violation. And, indeed, this case, which materially distinguishes it from People v. Commage, shows that he was not able to do so. Deputy Dyke was not able to cite or arrest Ms. Baskerville. Could we be precise in this? Because this is something I can't tell from the appellate court opinion. Is this an arrestful offense? Or I don't understand the writing of the ticket versus arrest. Sure. Well, Your Honor, in Illinois, I'm afraid I don't remember the case name, but even a minor traffic violation, an officer can make an arrest even pursuant to a minor traffic violation. So for speeding? Absolutely. Could arrest someone, take them into custody for speeding? Yes, Your Honor. And, again, I apologize for not having the case name, but I'm happy to provide further briefing, supplementary briefing, if you would like. But for whatever charge this was, there was not a need to have a complaint, a plumber hearing. All that was needed to charge her was the writing of the ticket. Is that correct? That is correct. And the – well, that's correct if that's what the officer determined in his discretion needed to be done. The – but the fact of the matter is the officer was not able to complete the traffic stop by issuing the citation until three to four weeks later. The officer attempted to mail the citation to Ms. Baskerville. The ticket was returned. It was not until three or four weeks later, after Ms. Baskerville had been pulled over again, reoffending for the very same violation, driving on a suspended license, that Deputy Dyke was able to serve her. So there is a material delay in Deputy Dyke's ability to complete an authorized act, which is the traffic stop and the citation of defendant's wife. But how did Joseph impede in that situation? Well, as we note in our briefs, Your Honor, there were several other authorized means by which Deputy Dyke could have continued to pursue the traffic stop. He could have rung the doorbell. He could have shouted from the porch, you know, threatening Ms. Baskerville with obstruction charges on top of the traffic citation. There are several further authorized acts that Deputy Dyke could have taken in this instance. And he was dissuaded from doing so by his interaction with the lie. Yes, Your Honor. What else did he do besides the lie? Under Raby, though, you were discussing before that the phrase resists and obstructs a statute should not be defined so broadly that it just wouldn't include a verbal disagreement. Well, we submit, Your Honor, that Raby does not contemplate conduct falling between mere argument and a physical act. The only verbal conduct Raby contemplates, mentions, is mere argument. And as several appellate courts have held, people versus Bohan in the Fifth District, people versus Meister in the Fourth District, Raby's animating concern was that citizens not be subject to arrest for mere verbal disagreement with a police officer. Isn't that what this is? You know, one position is she's home and one is she isn't home. It's not disagreement with an officer's conduct, Your Honor. It's a blatant lie. So it's qualitatively different from mere verbal disagreement. What if he'd come out there and just argued with the policeman? And in that process, she had an opportunity to leave or whatever. Would that be obstructing? Arguably, Your Honor, absolutely. So while you say, under Raby, arguing with a policeman isn't good enough or it's not illegal, you're saying it could be illegal? Or is there a difference between arguing with a police officer and lying to one? Absolutely. There is absolutely a difference between arguing with a police officer and lying to one. Oh, I beg your pardon. No, I want you to articulate the difference and then tell me why it should make a difference. Sure. Well, again, Raby was explicitly concerned only with the notion that citizens who voice disagreement with a police action might be subject to arrest, smacks of totalitarianism. But in this case, this is an affirmative attempt by the defendant to disrupt and impede an investigation by providing false information. And as we know from Counsel, could I just ask you this one question? Absolutely. Which I think might be helpful here. Sure. Can you compare the statute we're looking at, 31-1, with 31-4? Absolutely, Your Honor. 31-4, the language therein and the types of obstruction enumerated therein lend further support for our argument that obstruction under 31-1 encompasses nonphysical conduct. Another argument might be that there are two different statutes. 31-4, obstruction of justice, a person commits obstruction of justice when he, for example, furnishes false information. So for this very act that you're describing here, 31-4 seems to apply, doesn't it? Your Honor, two answers to your question. One, very briefly, is this Court expressed concern in People v. Comage that minor offenses would be punishable as felonies if it found the other for the State in that case. In this case, the fact that conduct that might be punishable under 31-4, which is a felony statute, might also be punishable under 31-1 means that more minor examples of obstruction can be appropriately punished as misdemeanors rather than every provision of false information to a police officer being funneled into the felony statute. And as far as whether 31-4, 31-4 is the light that 31-4 sheds on 31-1, the best reading of 31-4 is that it just describes a certain subset of overall obstructive conduct. As we state in our brief, 31-4 also lists several physical acts, such as destruction of evidence, that constitute obstruction. And I beg your pardon, if I might quickly finish my answer. Please. Okay, thank you very much. Please finish. So 31-4 lists many physical acts, which under rabia or even under defendant's argument would constitute obstruction. So 31-4's enumeration of certain types of obstruction is not a reason to exclude those types of obstruction from 31-1 obstruction. Thank you. Thank you. Counsel for the appellee. Good morning. May it please the Court, Counsel. I am Jay Wigman, an attorney for Joseph Maskerville, defendant appellee, who asserts that the State failed to prove the defendant guilty of obstruction of a peace officer under Section 31-1, in that the State failed to prove the following elements. Could the State have charged him under 31-4 with furnishing false information in a felony? It could have, yes. So we have a situation where he could be charged with a felony for lying to a police officer but not with a misdemeanor? If it could be proved that he had possessed the intent to mislead the officer or to obstruct the investigation or apprehension. And it's those last two elements, and just to briefly set forth again, the elements are that the defendant committed an act that, secondly, prevented the officer from, third, performing an authorized act within his duties. So to this extent, the defendant's primary three-pronged argument is that, one, he did not lie to the officer. Two, he did not impede the officer from performing his duties. And three, a lie does not constitute obstruction under Section 31-1 the way it is set out in Section 31-4 as obstructing justice. Mr. Wigman, you stated the elements, and I believe you used the phrase an act. That's correct. Is that in the statute? It is not. It is the interpretation of obstruction as set forth in Landry and adopted by this Court in Raby in 1968. But is that under 31-1 or 31-4? It was under 31-1 that the charge was made in Landry and in Raby. It was obstruction of a peace officer. And it shows that the design of the act was to protect an officer on the scene from a physical encounter. And part of that can be taken from the fact that his corrections officers were also covered by the statute section. What about where Landry says that 531-1A, quote, furthers the legitimate state interest in protecting peace officers, preventing frustration of the valid enforcement of the law,  I mean, is providing false information to a police officer who is actively engaged in an investigation, would that be a frustration as contemplated under Landry? Well, within Landry it went further to say that the way that the officer could be frustrated in the performance of his duty as distinguished from obstructing justice is by a physical act and strictly a physical act because the balance in Landry was between the right of speech and the right of assembly, particularly in that case, versus the right of the peace officer to perform his duties and to be safe in doing so. And so it was physical acts that were prevented and it was specifically set forth going limp, forcefully resisting arrest, or physically aiding a third party to avoid arrest. And it's this physical element of aiding a person from arrest that is missing in the instant case, in that there was no physical involvement of the defendant in attempting to obstruct the officer from arresting Mrs. Baskerville. But Mr. Wigman, to go back to where I was before, that's the question here, isn't it, about the act. The statute doesn't require it, but the interpretation under Raby, I mean, that's the actual holding of the third district, that obstruction in this case could be, to sustain that, you have to have the proof of an act. I mean, that's the issue that's before us. Does obstruction require an act or not? Whether or not it's a, you know, before you even get to the question, is the statement a lie or not, if it's required an act, if there's absent an act, it doesn't matter if he lied or not. That's correct. And the holding in Raby, which has been undisturbed for over 40 years, is that it requires a physical act. And that was from a plain reading of the dictionary definition, and the court was required to resort to a dictionary definition because obstruct is not defined in 311 the way it is in 314. In 314, several fashions of obstruction are set forth, and they include physical elements, they include nonphysical elements, such as furnishing false information. That kind of definition of obstruction was not provided in 311. And so the court in Landry, and then as was adopted by Raby, turned to a dictionary definition, and then in the context of the language of the statute, found that it involves the performance of an officer of acts and resistance, automatically looking at the dictionary definition in the context of that section, requires that there be an act by the defendant as well, that it involves the actions of an officer, the actions of a defendant. And again, the fact that a physical element is the concern is revealed as opposed to an investigation as was part, or a prosecution as was part of 314, is shown by the fact that corrections officers are provided for, that the same language is now used to cover emergency management workers and to protect those who are on the scene and involved in a physical element. What's the significance that there are, I believe, two provisions in Article 31 of the Criminal Code that explicitly state that the provision of false information constitutes obstruction? I'm sorry, in which section? Article 31 of the Criminal Code. I guess there's ten provisions that criminalize interference with a police officer, and two of those provisions specifically state that the provision of false information, right, a lie, constitutes obstruction. And I believe that's Section 31.4.5, if I'm not mistaken, which was recently enacted because of the concern that lying to a police officer about identification was obstructing an officer at the scene of arrest. It's something that was enacted in response to a problem and goes to the concern of legislative acquiescence that while the language in Raby has specifically set forth that a physical act must occur, no action has been taken by the legislature in a 40-year period to change that. There was a change made by Section 4.5, I believe in 2010, to address the concern of false identification of oneself or of another in terms of an arrest. But at least it's an acknowledgment, isn't it, that some provisions of the code would indicate that obstruction is more than a physical act? So you're saying it was tailor-made to those, to that specific situation? And in all, so in some areas in which we're looking at interference with a police officer, obstruction can be the provision of false information, and in others a physical act would be required? That's your position? That's correct. And I believe it's demonstrated in two fashions. One is the fact that the Act comprehensively covers any of a number of situations where there could be interference with a public official, and recognizing that there may be on-the-scene concerns that are different from other investigative or prosecutorial type of areas. The second factor is that it is set forth explicitly in some sections and not in others, and the rule of Griever is that where it is set forth or defined in one fashion in one section, by omission explicitly in other sections is not meant to apply in those sections. Getting back to the question concerning whether an act is necessary, was Raby charged as resisting? It just runs in my mind the State's argument indicated, even though the terms are both used in the statute, that Raby was a resisting case, which would imply an act. Yes. Raby was set forth as resisting, but the Court found in Raby that both resisting and obstructing imply physical elements and defined both words in those terms. But the issue of obstructing was actually not before the Court in Raby? No. That section was, but not obstructing specifically. Just to follow up on Justice Carmeier, and I know both of you have argued this in the brief, so we can just go back and reread it, but I'd like you to capsulize your position. Since the statute uses the phrase resists or obstructs, and you're saying Raby is treating them both the same way, I mean, under statutory construction, since there's two different words, we would not assume they mean the same thing. That's correct. And it has never been taken that they mean the same. But how do you summarize your argument that we should also continue to view obstruct as requiring this physical act vis-a-vis or versus resist? The inference that appears to have always been taken is that resisting is meant to apply to the defendant himself, and obstruction involves a third party. And specifically, if you look to the finding in Raby regarding physically aiding a third party, if I'm the person being arrested, then I'm the natural resister. But if another person comes to my assistance, they would be the obstructer, is the fashion in which I would interpret resisting versus obstructing, that it's meant to cover not simply the defendant, but those who might come to the defendant's aid. Most instructive to this case, I think, is this Court's recent finding in People v. Comage, wherein the majority talked about whether or not a defendant is materially concealing an item. In the instant case, there was no proof that the defendant in any fashion impeded the officer. He gave permission to the officer to enter the premises to search. And let's note that the officer did not have the authority without that permission to enter into the premises. And that's where the third element of obstructing a peace officer comes into play, is the fact that he would not have been performing an authorized act within his official capacity had he attempted to enter the premises. And he didn't have the authority to require the defendant to remove his wife from the premises for the purposes of arrest. At what point in time did he offer to allow the officer to enter the house to look for the wife? As I understand, he came out first and then went back in and came out? He came out first, spoke with the officer. The officer said, I saw your wife go into the house. He said, I've been sleeping on the couch. She's not there. I was the last one to drive the van. The officer says, go look. He went in, looked, came out, and said, I don't know what's going on, and in the same breath said, search the place yourself if you want. The officer did not take him up on that offer, but had he would have been the only way to prove whether or not Mrs. Baskerville was in fact in the premises and hadn't entered or hadn't exited the home through a back door. The officer. A reasonable trier of fact would not be able to. Well, let me put it this way. How do you address the argument of counsel that if the officer believes the lie, that that impedes the desire to go in and look at the, go through the house? I think then that the officer's decision to believe something that went contrary to what he had seen is not a reasonable response. And the fact that he's provided information does not obstruct him because it's his decision whether to act upon that information or disregard it. And I'm certain that there are a number of scenes involving suspects or defendants where the officer is told something that he doesn't believe and doesn't rely upon that information as the basis for his subsequent actions. The fact that the officer was stopped here was the officer's choice and not because of anything that the defendant said. Further, let's assume that the defendant had said simply, yes, she is in there, but you can't go in. The officer still would not have been impeded because he could not have entered the premises without the defendant's authorization. So to that extent, the officer was not impeded in that he couldn't go into the house and he wasn't impeded because he was able to mail a ticket to the defendant and to the defendant's wife. And to the extent that the defendant, or to the extent that the State claims that the officer wanted to arrest Mrs. Baskerville, I think is refuted by the fact that he didn't arrest Mr. Baskerville, even though he told him at the time that he had the ability to do so or would be sending him a ticket. Had he intended to arrest Mrs. Baskerville, he would have arrested Mr. Baskerville at the scene for the offense that he believed had occurred. So the facts of the case show that there was no lie to the officer to the extent that it wasn't demonstrated that Mrs. Baskerville was in the premises. And there was no showing that the defendant had impeded the officer. One, simply impeded him, or two, impeded him in the performance of his official duties, which is essentially what Comage teaches, that the fact that there may be an attempt to conceal or to hinder is not enough if there is not, in fact, a material concealment. And in this case, there was not a material obstruction to the extent that the officer believed what he believed, believed what he saw, did not believe the lie, and was not impeded in any event by that lie. Raby shows us that, and the last thing that I think can be taken from Comage is Justice Freeman's dissent, where he notes that legislative intent can be taken from the fact that there was legislative acquiescence. And in that case, I believe the time period was eight years. In this instance, we're talking about a 40-year period in which the legislature, had it wished to refute the finding that a physical act is required, that mere argument is insufficient, that the only way a physical act can hinder an officer is where a defendant goes limp or forcefully resists or physically aids a third party to avoid arrest. Had the legislature meant to address that, it could have at any time within the last 40-some years. So to that extent, it is clear that Raby still holds that a physical act is required. But even should this court find that a physical act is not required, that a lie would be sufficient, the state has failed to prove that a lie was made and that that lie in any fashion impeded the officer in the performance of his official duties. And for those reasons, if there are no further questions, I would briefly conclude by asking that the Third District Appellate Court be affirmed. Thank you.  Thank you, Your Honor. Very briefly, first of all, we would urge the Court, even if it finds that there was not actual obstruction in this case, to find in our favor on the interpretational issue. Regarding that interpretational issue, a defendant urges upon you a nonsensical definition of the word obstruct, in which for purposes of 31-1, lying is not a misdemeanor offense, but under 31-4, lying is a felony offense. Secondly, regarding that there have been several questions about time durations between points. And because a defendant was convicted and the trier of fact found against him, gaps in the record are construed against him. First of all, I would also like to say that there was no legislative acquiescence in this case. The notion that ravy has been undisturbed in the way the defendant means it is mistaken, as evidenced by the numerous cases, numerous appellate court cases, that hold that ravy did not contemplate conduct such as defendants that lies in between mere argument and physical act. So the notion that defendants' interpretation of the word obstruct or interpretation of ravy as requiring a physical act, there's been no legislative acquiescence to that point. And more importantly, neither ravy nor landry, both of which, as far as this point is concerned, whether the word obstructs, requires physical act, particularly well-reasoned, can trump the plain meaning of the statute's language, which, as we have discussed, clearly encompasses non-physical conduct. Excuse me. Yes, Your Honor. Forgive me if you've already covered this point, and I want to make sure I'm correct about this. Was ravy charged and prosecuted under the obstruction prong or the resisting prong? The resisting prong, Your Honor. And as both the dissent below and the court in People v. Meister pointed out, those two terms are quite different. Resisting does have a physical connotation. Obstruction is a much broader term, which includes non-physical conduct. And I believe it was to your point, Your Honor, there's a cardinal law of statutory construction that no term in a statute should be treated as surplusage, which treating resisting obstructs as one kind of monolithic super term would violate. One follow-up question. Oh, absolutely. On this point that Mr. Wiegman argued that obstruction is viewed as the act of a third party, is that, and you may have touched upon this earlier, and if you did, again, I'm sorry. I'll make sure I got this right. And does ravy really make that distinction, or does any case? Ravy doesn't really distinguish between resisting and obstruction. I mean, ravy basically lifts this passage from Landry whole and dumps it into its own opinion. There's not a whole lot of original analysis in ravy. And as I recall right now, Your Honor, no, I do not believe that there's any distinction, any individual analysis of those two terms. I think they're considered kind of, again, as one kind of combined term. That's my recollection, Your Honor. But is the interpretation of obstruction as the act of a third party, whether it's not in ravy, is it in any case that gives us authority on that? Not to my knowledge, Your Honor. And I mean, I think you can, one can easily imagine a situation in which one obstructs the law enforcement's attempts to arrest him or prosecute him, destroying evidence that implicates him, you know, barricading himself in a room. So I think that obstruction is not necessarily only in reference to attempts to obstruct the apprehension or prosecution of a third party. Mr. Wigman made an argument, if I understood it correctly, to the effect that if the defendant in this case had not lied but said his wife was in the house, what difference would it transpire? And this, I think, is in connection with whether or not what the defendant did actually impeded the officer in the performance of his duties. Absolutely, Your Honor. Well, the second time defendant lied that his wife was not in the house, Deputy Dyke did not know whether that was true or not. If he had known that it was a lie, again, there were numerous authorized steps he could have taken to complete or effect a traffic stop to, you know, cajole or threaten Ms. Baskerville into coming out of the house and being cited. But the first time, I think the facts were he saw her go into the house, so he knew she went in, whether the defendant knew it or not. What could he have done at that point if the defendant had simply come out and said, yes, she's in there, so what? Absolutely, Your Honor. If at first, in the first lie, the first time he said untruthfully that his wife was in the house, and just as an aside, the notion that that was not a lie is put to rest by the fact that the trial court found that it was a lie. The first lie, you could argue that, you know, it would be difficult to argue, and again, you don't, the record is not clear as to the duration between events in this case. Well, let's assume he didn't lie. He said she's in the house. What does the officer do? Well, the officer, if the officer has, and that's, I see what you're saying, Your Honor, and that's a good question. What the officer did in that case, he basically treated it as though it was a lie because he had just seen the wife enter, was, you know, please try to resolve this kind of amicably, peaceably. Please reenter the house and ask your wife to come out. So that was the step that Deputy Dyke took in that situation when he thought that the wife was indeed in the house. Now, when he reemerges after an indeterminate period of time. What would he have done differently when he thought this was a lie if he said she's in the house? Well, the officer would have done the same thing. Is that correct? Initially, absolutely, Your Honor. So is there any impedance at that point? At that point, no. I think the actual impedance comes along with the second lie after this duration of time, during which Deputy Dyke had no idea what Ms. Vaskerville was doing. And then getting back to previous questions, do we have any proof that the second one was a lie? Was she in the house? Well, Your Honor, again, defendant concedes as much on, if I recall correctly, page 25 of its opening brief. And the trial court held that it was a lie. Found him guilty of obstruction for lying regarding his wife's whereabouts. So that's a factual finding by the trial court that is supported, certainly at least supported as a reasonable inference from the fact that she was seen entering the house. So it's a reasonable inference that the trier of fact made that she remained in the house and that the statement that she was not in the house was a lie. So, again, under the standard of review, that fact is really not disputable. Was there a trial court factual finding how the lie obstructed the performance of the officer's duties? Your Honor, I believe there was an implicit finding because the court convicted defendant of obstruction. To my recollection of the record, there was no specific factual finding regarding the nature of the obstruction or anything of that nature. So, you know, the record does not feature any such information. Mr. Meyer, did I catch that right at the beginning of your rebuttal that it sounded like, quickly, you said decide the interpretational issue whether or not a nonphysical act, hear the lie, could constitute obstruction even if we were going to find that there was not an impediment in this particular case? Did you make that statement? I mean, did I miss it? Yes, Your Honor. There are two questions that can be determined individually. And the first interpretational question, we would urge the court to decide that in our favor, even if it does find in favor of the defendant pursuant to his cross appeal. So, yes. And we view the interpretational question here as quite important because there is a split in the appellate courts. The Fourth District in Meister, the Fifth District in Bohannon, the First District in Gibbs, all have found that the Illinois Supreme Court, this court, has not addressed whether 31-1 obstruction includes verbal conduct between mere argument and a physical act. So that clarity is needed, Your Honor. Are there any other questions? Time has expired. Okay. All right. Thank you very much. Case number 111056, People v. Baskerville, will be taken under advisement as agenda number one. Thank you for your arguments.